UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>  vs.<br><br>STANLEY PATRICK WEBER,<br><br>           Defendant. | 5:17-CR-50033-JLV<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion to Suppress (Doc. 28). A hearing was held on November 1, 2017. Defendant was personally present and represented by his attorneys of record, Harvey Steinberg, Ryan Cox, and Phillip Stiles. The Government was represented by Assistant United States Attorneys Sarah Collins and Eric Kelderman. One witness testified at the hearing. Three exhibits were received into evidence. Both parties submitted briefs in preparation for the hearing, and supplemental briefing concluded on March 1, 2018. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

### **RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Suppress be denied.

## JURISDICTION

Defendant is charged in an Indictment with Aggravated Sexual Abuse, in violation of 18 U.S.C. §§ 2241(c) and 1152; Sexual Abuse, in violation of 18 U.S.C. §§ 2242(2)(A) and 1152; and Sexual Abuse of a Minor, in violation of 18 U.S.C. §§ 2243(a) and 1152. The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated March 9, 2015.

## FACTUAL BACKGROUND

A federal grand jury indicted Defendant Stanley Patrick Weber on February 22, 2017, for alleged sex crimes committed while he was employed as physician with the Pine Ridge Indian Health Services. (See Doc. 2). Special Agent Curt Muller, an inspector with the U.S. Department of Health and Human Services, investigated the allegations against Dr. Weber. As part of that investigation, SA Muller sought a search warrant for Dr. Weber's residence.

At the evidentiary hearing on the motion to suppress, SA Muller testified regarding the steps he took to obtain the search warrant. The court finds him to be a credible witness. SA Muller prepared a 30-page affidavit in support of the search warrant, which detailed the allegations against Dr. Weber. (Ex. 1). Five attachments supplemented the affidavit: Attachment A provided the property to be searched, limited to the residence, any vehicles, outbuildings, and persons on the property, and the contents of any computers and electronic storage devices; Attachment B provided a three-page list of the items to be

2

seized, specifically evidence of "violations of [18 U.S.C. §§] 2241, 2242, 2243 (sexual abuse), and 2423(b) (International Sex Travel);" and Attachments C through E provided photographs of Dr. Weber's residence.  (Ex. 1).

The search warrant itself identified the property to be searched, and listed the same property specified in Attachment A.  (Ex. 3).  The search warrant did not, however, identify the items to be seized, or the statutes allegedly violated.  Neither did the warrant contain language incorporating the attachments by reference.  Rather, when prompted to "identify the person or describe the property to be seized," the search warrant merely stated "evidence of a crime."  (Ex. 3).

The application similarly identified the property to be searched.  (Ex. 2).  In contrast to the search warrant, the application incorporated the affidavit and Attachments A–E when prompted to identify the items to be seized.  Further, the application stated the search was "related to a violation of 18 U.S.C. § 2241, 2422 [sic], and 2243."  (Ex. 2).  SA Muller testified at the evidentiary hearing that this line contained a typographical error, and the second violation should have read Section 2242 to match Attachment B.  (Doc. 46 at p. 23).

On February 24, 2017, SA Muller and Assistant United States Attorney Sarah Collins presented the search warrant, along with the application, affidavit, and attachments together in a packet to the undersigned magistrate judge.[1]  (Doc. 46 at p. 10–11).  The undersigned reviewed the packet of

---

[1]   Magistrate judges may properly issue report and recommendations regarding search warrants they previously authorized.  See United States v. Campbell, No. 12-CR-40039-KES,

documents, put SA Muller under oath, and signed and dated the warrant. (Id. at p. 11). The undersigned also signed the application, which incorporated the affidavit and Attachments A–E, and the affidavit itself. (Ex. 1 at p. 30; Ex. 2). SA Muller then took the warrant, application, affidavit, and attachments in a packet to the clerk's office for filing. (Id. at p. 12). At the evidentiary hearing, SA Muller testified that he believed at that time that the warrant was appropriate, and nothing about the warrant stood out to him as different from other search warrants he had dealt with. (Doc. 46. at p. 11).

On February 27, 2017, as part of the planning process before executing the search warrant, SA Muller briefed Internet Crimes Against Children (ICAC) task force members. (Doc. 46 at p. 15). At the briefing, SA Muller described Dr. Weber's case and provided task force members with copies of the search warrant, attachments, and the application. (Id.). On the morning of February 28, 2018, SA Muller conducted a second briefing with the same ICAC task force members, as well as members of the Spearfish Police Department and the Department of Health and Human Services Office of the Inspector General. All law enforcement members involved in the search of Dr. Weber's residence were present at the briefing. (Id. at p. 17). At that briefing, SA Muller again reviewed the search warrant attachments, and provided each law enforcement member with copies of the search warrant and attachments A and B. (Id. at p. 16). SA Muller informed law enforcement that they were to search for evidence

---

2012 WL 6042757 (D.S.D. Dec. 5, 2012) (adopting R&R of magistrate judge who also issued search warrant challenged in suppression motion).

of sexual abuse and sex travel, and that evidence of those two crimes could potentially intermingle.  (Id.).

Law enforcement executed the search warrant on February 28, 2017, at approximately 9:00 a.m.  (Ex. 3).  The search team seized less than one banker box of items, namely a variety of paper documents and electronic devices.  (Doc. 46 at p. 17).  Dr. Weber was at home when the agents executed the search warrant.  (Id. at p. 30).  The agents left a copy of the search warrant and a two-page detailed list of inventory seized.  (Id. at p. 30–31; see doc. 28-4).  However, the agents gave neither the affidavit nor the attachments to Dr. Weber.  (Doc. 46 at p. 30–31).

## DISCUSSION

Dr. Weber asks this court to suppress evidence obtained during the search of his residence.  In his motion, Dr. Weber argues that the search warrant was facially invalid because it neither particularized the items to be seized nor incorporated the more specific affidavit and attachments.  (Doc. 28 at p. 2–6).  Instead, the warrant simply authorized the seizure of "evidence of a crime."  (Id. at p. 3).  In response, the government argues the attachments' presence at every stage of the application and execution process rendered the warrant sufficiently particular.  (Doc. 39 at p. 7–8).  The government responds alternatively that the Leon[2] good-faith exception applies, meaning that suppression is unwarranted.  Dr. Weber argues that the good-faith exception

---

2    United States v. Leon, 468 U.S. 897 (1984).

does not apply because the officers had no reasonable basis to presume the warrant's validity.

Finally, Dr. Weber argues that a number of the items seized, including travel documents, passports, and a hotel rewards summary, exceeded the scope of the application, which does not reference international sex travel in violation of Section 2423(b).  (Doc. 28 at p. 6–7).  The government responds that although the application omitted Section 2423, the listed items are relevant to the other statutes listed in the application and Attachment B.  (Doc. 52 at p. 6–7).

The Eighth Circuit has held that a warrant must provide the requisite particularity when issued as required by the Fourth Amendment's Warrant Clause, and officers must perform the search reasonably, under the Reasonableness Clause.  Baranski v. United States, 515 F.3d 857, 861 (8th Cir. 2008).  Even if a warrant is subsequently found invalid, the evidence obtained may still be admissible under the Leon good-faith exception.  For the following reasons, the court finds that the search warrant did not violate the Fourth Amendment.  The court further finds that the Leon good-faith exception applies even if the warrant was found invalid.

I.   **Whether the Search Warrant Satisfied the Fourth Amendment's Warrant Clause**

The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. Amend. IV.  "Particularity

6

prohibits the government from conducting 'general, exploratory rummaging of a person's belongings.'" United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014) (quoting United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir. 1992)). "To satisfy the particularity requirement of the Fourth Amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007) (internal quotation omitted); see Groh v. Ramirez, 540 U.S. 551, 559–63, 561 n.4 (2004) (holding that search was illegal because warrant provided no particularity, did not incorporate affidavit, and affidavit did not accompany the warrant, there could "be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.").

The Eighth Circuit has broadly recognized that a warrant which does not on its face identify items to be seized may nevertheless satisfy the particularity requirement by incorporating a supporting document. See, e.g., United States v. Hamilton, 591 F.3d 1017, 1024 (8th Cir. 2010). The Eighth Circuit has failed to clarify further, instead creating two separate lines of caselaw regarding proper incorporation. While some cases require that the supporting documents "must both accompany the warrant *and* be incorporated into it," United States v. Curry, 911 F.2d 72, 77 n.4 (8th Cir. 1990) (emphasis added), others have held that a supporting attachment "may provide the necessary particularity if it is incorporated into the warrant, attached to the warrant, *or* present at the search." United States v. Nieman, 520 F.3d 834, 839 (8th Cir. 2008) (emphasis

7

added); United States v. Gamboa, 439 F.3d 796, 807 (8th Cir. 2006) ("'[A]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.'") (quoting Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir. 1987).

In United States v. Hamilton, the Eighth Circuit expressly recognized that the current law on incorporation is "questionable" and "thorny." 591 F.3d at 1027 (declining to clarify past caselaw on incorporation and instead relying on the good faith exception to find that the search at issue was valid). Although the Eighth Circuit did not rule on the incorporation question presented in Hamilton, it did deliberate the Fourth Amendment's particularity requirement. Id. at 1024–27. There, the appeals court discussed with approval Baranksi v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco, and Firearms, 452 F.3d 433, 440 (6th Cir. 2006) (en banc), a Bivens[3] case where a warrant clearly incorporated an affidavit that provided the list of specific items to be seized, but the incorporated document was sealed and not available at the search. See Hamilton, 591 F.3d at 1025.

In Baranski, the Sixth Circuit noted that the Fourth Amendment's Warrant Clause provides the requirements for proper *issuance* of the warrant, rather than *execution*. Baranski, 452 F.3d 440–41. The Reasonableness Clause of the Fourth Amendment governs the separate question of whether a warrant is reasonably executed. Id. at 444–45 ("To say that a warrant satisfies the Warrant Clause upon issuance, however, by no means establishes that a

---

[3]  Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

8

search satisfies the Reasonableness Clause upon execution."). The Sixth Circuit held therefore that the failure to bring the incorporated document to the search did not render the search warrantless. Id. at 444 ("The salient point is that Groh did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one."); see Hamilton, 591 F.3d at 1026 (quoting, e.g., United States v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001) (noting that the reasonableness of the execution of a warrant "is an entirely different matter than the question of whether the warrant itself is valid.")).

The same claimant involved in the Sixth Circuit's Baranski case subsequently brought a habeas action in the Eighth Circuit. Baranski v. United States, 515 F.3d 857, 860–61 (8th Cir. 2008). In that case, the Eighth Circuit "distinguished Groh because the magistrate in Baranski had signed the affidavit containing the limiting list of items to be seized, which satisfied the concern expressed in Groh that it be clear that the magistrate had the opportunity to restrict the scope of the search." Hamilton, 591 F.3d at 1026 (citing Baranski, 515 F.3d at 860); see Groh, 540 U.S. at 561 ("Even though petitioner acted with restraint in conducting the search, the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.") (internal quotations omitted). "Because the warrant in Baranski's case satisfied the particularity requirement *when issued* and because officers performed the search reasonably, no constitutional violation occurred." Baranski, 515 F.3d at 861 (citing Baranski, 452 F.3d at 436) (emphasis added).

9

This court finds the Eighth Circuit's analyses in Hamilton and Baranksi persuasive as applied to this set of facts.  The warrant in this case is, on its own, insufficiently particular.  It fails to set forth any items to be seized, does not reference the statutes allegedly violated, and does not incorporate any of the supporting documents.  However, the supporting affidavit, application, and attachments provide the necessary particularity; therefore, the concern is whether the supporting documents limited the search warrant when issued.

In order to satisfy Groh, written assurance must exist that the magistrate judge, not the agents themselves, restricted the scope of the search.  Groh, 540 U.S. at 560–61.  In contrast to the invalid warrant issued in Groh, here the undersigned magistrate judge signed and dated the warrant, the application, and the affidavit.  See Baranski, 515 F.3d at 860–61.  Thus, unlike Groh, the reviewing court has written assurance that the magistrate judge reviewed the affidavit and the application, which specified the items to be seized, and found probable cause to seize each of those items.  See Hamilton, 591 F.3d at 1026 (citing Baranski, 515 F.3d at 860).  Because the court has assurances that the magistrate judge clearly reviewed the supporting documents and restricted the scope of the search, the warrant satisfied the Fourth Amendment's Warrant Clause when issued.

## II. Whether the Execution of the Search Warrant Satisfied the Fourth Amendment's Reasonableness Clause

The court further finds that the agents' search of Dr. Weber's residence satisfied the Fourth Amendment's Reasonableness Clause.  The Fourth Amendment's reasonableness inquiry always turns on the facts of a particular

case. See Illinois v. Gates, 462 U.S. 213, 230–232 (1982). This standard is flexible and should not be read to mandate rigid rules that ignore countervailing law enforcement interests. United States v. Murphy, 69 F.3d 237, 243 (8th Cir. 1995). Factors relevant to reasonableness include the scope of the warrant, the behavior of the searching agents, the conditions where the search was conducted, and the nature of the evidence being sought. United States v. Bach, 310 F.3d 1063, 1067 (8th Cir. 2002) (citing United States v. Schandl, 947 F.2d 462, 465 (11th Cir. 1991)). Here, no evidence indicates law enforcement behaved unreasonably while searching the residence or conducted the search under unreasonable circumstances. Rather, the reasonableness inquiry in this case centers on the scope of the warrant.

Dr. Weber argues the search violated the Fourth Amendment because the officers failed to both incorporate the affidavit into the warrant and leave the affidavit at the scene. (Doc. 53 at p. 3–4). Further, SA Muller testified that he did not provide the search team with copies of the 30-page affidavit. (Doc. 46 at p. 26). However, SA Muller provided the search team with copies of the search warrant, application, and attachments, which specified the items to be seized. (Id. at p. 27). The search team also left Dr. Weber a copy of the search warrant and the list of inventory seized. (Id. at p. 30). Finally, the government states that SA Muller brought the attachments, which contained the list of items to be seized, to Dr. Weber's residence to ensure law enforcement limited the search. (Doc. 52 at p. 5).

The court finds that law enforcement conducted the search in a reasonable manner. The Eighth Circuit has "determined that an attachment renders the warrant sufficiently particular if the attachment is present at the execution of the search, regardless of whether the searching officers provide the attachment to the defendant following the search." United States v. Sigillito, 759 F.3d 913, 925 (8th Cir. 2014) (citing United States v. Riesselman, 646 F.3d 1072, 1077 (8th Cir. 2011). Here, the attachments were present at the scene and, as discussed above, the warrant and attachments together satisfied the particularity requirement. Furthermore, SA Muller conducted in-depth briefings with law enforcement on the scope of the search, and provided every searching officer with a copy of the attachments. The attachments, not the affidavit, provided the list of items to be seized and limited the search. Therefore, the court finds that the scope of the search was sufficiently limited at execution.

The court also rejects the argument that law enforcement's failure to leave copies of the attachments and the affidavit at Dr. Weber's residence violated the Fourth Amendment. In United States v. Sigillito, the Eighth Circuit dismissed an analogous argument where searching officers failed to leave the limiting attachments at the scene of the search:

> [W]e reject Sigillito's contention that the executing officers intended to conceal the scope of the investigation by failing to leave Attachment A at the scene of the search. The record demonstrates that the executing officers left a comprehensive handwritten inventory of the items seized at the scene of the search. This inventory was sufficient to apprise Sigillito of the scope of the government's investigation . . . even assuming that the government had such a duty to inform Sigillito at that stage in the proceedings.

12

759 F.3d at 925.  Similarly, SA Muller left a detailed inventory of the items seized, which informed Dr. Weber of the scope of the search.  For these stated reasons, the court finds that law enforcement executed the search reasonably. "Because the warrant . . . satisfied the particularity requirement when issued, and because officers performed the search reasonably, no constitutional violation occurred."  Baranski, 515 F.3d at 861.  Therefore, suppression is not warranted in this case.

### III.     The Leon Good-Faith Exception

Even if the search warrant failed to meet the particularity requirement of the Warrant Clause, the facts of this case do not support suppression under the good-faith exception articulated in United States v. Leon, 468 U.S. 897 (1984).  In Leon, the Supreme Court held that the exclusionary rule does not apply when an officer acted "in objectively reasonable reliance on a subsequently invalidated search warrant."  Id. at 906.  Stated another way, the inquiry is whether a "'reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'"  Malley v. Briggs, 475 U.S. 335, 345 (1986) (quoting Leon, 468 U.S. at 922 n.23).

The Leon Court instructed that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."  Leon, 468 U.S. at 918.  If applying the rule would not appreciably deter future violations, the rule does not apply.  Arizona v. Evans, 514 U.S. 1, 11 (1995).  Rather, "[t]o trigger the exclusionary rule, police

13

conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 144 (2009). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Id. at 143–44 (listing cases where the good-faith exception was inapplicable because of "patently unconstitutional," flagrant conduct, including intentionally warrantless searches and searches pursuant to false warrants).

The Leon Court set forth situations where suppression remains appropriate: "depending on the circumstances of a particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923; see also Groh, 540 U.S. at 558 (determining good-faith exception did not apply because warrant was "so obviously deficient" that search must be regarded as warrantless). "As this language makes plain, the Leon exception is not automatically inapplicable in every case where a warrant is found invalid on the ground that it is insufficiently particular." United States v. Curry, 911 F.2d 72, 77 (8th Cir. 1990) (citing, e.g., Massachusetts v. Sheppard, 468 U.S. 981, 988–91 (1984)).

Here, a number of factors weigh in favor of applying the good-faith exception. First, as discussed above, SA Muller kept the warrant and attachments together as a single bundle throughout the application and execution process. Second, a neutral magistrate considered the packet as a

whole, and signed the application, affidavit, and search warrant finding probable cause. Third, SA Muller himself directed the search, briefed law enforcement on the case, and provided all searching officers with copies of the limiting attachments. "This fact is significant because in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed." Curry, 911 F.3d at 78. Finally, as to Dr. Weber's argument for suppressing any evidence of international sex travel, the typographical error on the application misstating the applicable statute "was more a clerical error than bad faith," as shown by SA Muller's testimony. Id. "The responsibility for the inadvertent omission . . . must be borne by the issuing official, as the final reviewing authority." Id. (internal quotations and alterations omitted) (holding that the exclusionary rule does not apply to judicial error). These factors all support imposing the good-faith exception. See United States v. Hamilton, 591 F.3d 1017, 1029–30 (8th Cir. 2010) (applying good-faith exception where mistake in warrant was due to clerical error; warrant incorporated affidavit; magistrate signed warrant and affidavit; and detective who applied for warrant directed the search, and carefully seized only those items included in the affidavit).

      Two factors, by contrast, weigh in favor of suppression. First, the search warrant on its face did not provide sufficient particularity; and second, federal law enforcement had applied for other search warrants in a similar way, a practice which has since been corrected. (Doc. 46 at p. 20–22); compare with

Hamilton, 591 F.3d at 1029 (mistake in warrant was nonrecurring; warrant clearly incorporated affidavit). However, SA Muller testified that he did not realize at the time that he needed to specifically incorporate the limiting attachments. (Doc. 46 at p. 22). Considering the uncertainty within the Eighth Circuit on proper incorporation, the court finds this testimony credible.

Given the "questionable state of the law" within the Eighth Circuit on incorporation, the magistrate's approval of the warrant, and SA Muller's testimony that the mistake was unintentional, the court finds that law enforcement acted in objectively reasonable reliance on the search warrant. Hamilton, 591 F.3d at 1027, 1029. This case does not present the kind of "deliberate, reckless, or grossly negligent conduct" that the Supreme Court intended to deter. Herring, 555 U.S. at 144. Neither does this case feature recurring or systemic negligence sufficient to merit exclusion. See id. at 146–47 (listing cases holding, for example, it would not be reasonable for police to rely on a faulty recordkeeping system routinely leading to false arrests, or obtain warrant based on "bare bones" affidavit and then rely on colleagues ignorant of the facts of the case to conduct the search.).

Even if the warrant in this case failed to meet the particularity requirement of the Fourth Amendment's Warrant Clause, SA Muller's actions were objectively reasonable in believing the warrant, bundled together with the carefully constructed supporting documents and authorized by a neutral magistrate judge, authorized the seizure of the items obtained from Dr. Weber's residence. Under these facts, the court finds the warrant was not "so obviously

deficient" that no reasonable officer would presume it valid. Groh, 540 U.S. at 558. "[E]xclusion of evidence is required only when the error prejudices the defendant, or the police act in reckless disregard to the proper procedure. Leaving an inventory of the items seized at the scene renders it difficult for defendants to show prejudice." Sigillito, 759 F.3d at 925 (citing Riesselman, 646 F.3d at 1078). Because Dr. Weber shows no prejudice, and because law enforcement acted reasonably, suppression is not appropriate.

## CONCLUSION

The search of Dr. Weber's home was not unconstitutional because the search warrant, combined with the supporting documents, contained the requisite particularity when issued. Further, law enforcement conducted the search reasonably. Finally, even if the warrant was invalid, the Leon good-faith exception applies. Accordingly, it is respectfully recommended that the Motion to Suppress be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 26th day of June, 2018.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge