UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>STANLEY PATRICK WEBER,<br><br>　　　　　　　Defendant. | CR. 17-50033-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant Stanley Patrick Weber filed a motion to suppress physical
evidence seized pursuant to a search warrant.   (Docket 28).   The suppression
motion was referred to the magistrate judge for a report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order dated March 9,
2015.   An evidentiary hearing was held and Magistrate Judge Wollmann
issued a report and recommendation ("R&R") on defendant's motion to
suppress.   (Dockets 54 & 55).   The magistrate judge recommended
defendant's motion to suppress physical evidence be denied.   Id. at p. 1.   The
defendant timely filed his objections to the report and recommendation.
(Docket 56).   For the reasons stated below, the defendant's objections are
overruled and the report and recommendation is adopted consistent with this
order.

**DEFENDANT'S OBJECTIONS**

Defendant's objections to the R&R focus on his assertion the magistrate judge improperly applied the law to the facts presented during the suppression hearing.  Id. at pp. 1-3.   He contends the R&R's "proclamation that the law is in a 'questionable state' is belied by those cases which have directly addressed the issue.   Incorporation is absolutely a basic requirement for a warrant that relies upon an affidavit to be constitutionally valid."   Id.   The defendant also objects to the R&R arguing "[a] warrant that is constitutionally invalid on its face is not saved by the holding in United States v. Leon, 468 U.S. 468 U.S. 897 (1984)."   Id. at p. 3.

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   Id.   The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   Id.   See also Fed. R. Crim. P. 59(b)(3).

The defendant's objections do not claim the magistrate judge made any factual findings which are not supported by the evidence.   (Docket 56).   The court completed a *de novo* review of the suppression hearing transcript and the exhibits offered at the suppression hearing.   To the extent necessary, the court concludes the factual findings of the magistrate judge are supported by the

evidence presented during the hearing.   The findings made by the magistrate judge are adopted in full.   (Docket 55 at pp. 2-5 & 14-17).   Because the facts are relevant to defendant's legal challenges to the R&R, the court provides a summary of the factual findings stated in the R&R.[1]

## FACTS

On February 22, 2017, a grand jury indicted the defendant for alleged sex crimes committed while he was employed as a physician with the Pine Ridge Indian Health Services.   Special Agent Curt Muller, an inspector with the United States Department of Health and Human Services, investigated the allegations against Dr. Weber.

As part of the investigation, SA Muller sought a search warrant for Dr. Weber's residence.   SA Muller prepared a 30-page affidavit in support of the search warrant, which detailed the allegations against Dr. Weber.[2] Suppression Hearing Exhibit 1.   Five attachments supplemented the affidavit.

Attachment A identified the property to be searched:

> The property located as 2315 5th Avenue, Spearfish, South Dakota, a single story, single family residence, light tan in color with white trim, with white garage doors, the numbers "2315" are clearly displayed to the right of the right-most garage door, as photographically depicted in Attachments C-E;
>
> [A]ny vehicles;

---

[1] Unless otherwise stated, all factual references will be to the R&R without further citation to the report.

[2] Dr. Weber's objections do not challenge the factual statements made in SA Muller's affidavit.   (Docket 56).

[O]utbuildings, or detached garages and the curtilage of the property;

[A]ny persons on the property; and

[T]he content of any computer and electronic storage devices, cellular phones, tablets, and any other electronic storage devices, including but not limited to external and internal hard drives, thumb drives, flash drives, gaming devices with storage capability, storage discs, SD cards, cameras, cellular phones, smart phone and phones with photo-taking and/or internet access capabilities, as further described in Attachment B.

Attachment B provided a three-page list of the items to be seized, specifically:

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2241, 2242, 2243 (sex abuse) and 2423(b) (International Sex Travel).

Attachments C through E are photographs of Dr. Weber's residence.

Id. at pp. 31-38.

SA Muller also prepared an application for a search warrant.[3]

Suppression Hearing Exhibit 2. The application identified the property to be searched by the same description contained in the affidavit. Id. The application identified the property to be searched and seized if found, as "See

_____

[3]The application for a search warrant is form "AO 106 (Rev. 01/09)" and is a standard form used in the District of South Dakota. See Suppression Hearing Exhibit 2.

Affidavit in Support of Application for Search Warrant and Attachments A-E."

Id.   SA Muller checked as the basis for the search, the following:

> [E]vidence of a crime;
>
> [C]ontraband, fruits of crime, or other items illegally possessed;
> [and]
>
> [P]roperty designed for use, intended for use, or used in
> committing a crime.

Id.   The application indicated "[t]he search is related to a violation of 18 U.S.C.

§ 2241, 2422,[4] and 2243."   Id.

SA Muller prepared the search and seizure warrant ("search warrant").[5]

Suppression Hearing Exhibit 3.   The search warrant contained the same

property to be searched as in the application.   Compare Suppression Hearing

Exhibits 2 and 3.   The search warrant referenced "[a]n application by a federal

law enforcement officer," without any further explanation or incorporating by

specific reference SA Muller's application and stated "that the affidavit(s), or

any recorded testimony,[6] establish probable cause to search and seize the

---

[4]SA Muller testified this citation is a typographical error and it should
have referred to "2242" to match Attachment B.   (Docket 55 at p. 3)
(referencing Docket 46 at p. 23:7-13).   SA Muller also testified the citation for
international sex travel, "2423(b)" should have been included in the
application.   (Docket 46 at p. 23:16-19).

[5]The search and seizure warrant is form "A0 93 (Rev. 12/09)" and is a
standard form used in the District of South Dakota.   See Suppression Hearing
Exhibit 3.

[6]There is no indication any recorded testimony was presented by SA
Muller to the magistrate judge in support of the search warrant.

person or property," without further explanation or specifically incorporating SA Muller's affidavit. Suppression Hearing Exhibit 3. The search warrant did not identify the statutes allegedly violated and where the form prompted the preparer to "identify the person or describe the property to be seized," SA Muller typed in "evidence of a crime." Id. SA Muller did not realize at the time that he needed to specifically incorporate his application, his affidavit and the attachments into the search warrant.

Prior to meeting with Magistrate Judge Wollmann, the search warrant packet was e-mailed to her chambers so she had ample time to review the documents. (Docket 46 at p. 9:12-18). Sometime later the magistrate judge notified the United States Attorney's Office that the search warrant packet had been reviewed and the court was prepared to complete the search warrant application process. Id. at pp. 9:19-10:2.

On February 24, 2017, SA Muller and Assistant United States Attorney Sarah Collins presented the search warrant, along with the application, affidavit and attachments as a packet to Magistrate Judge Wollmann. SA Muller was placed under oath by the magistrate judge. In the presence of Judge Wollman, SA Muller signed the affidavit and application. Suppression Hearing Exhibit 1 at p. 30 and Exhibit 2. Judge Wollmann signed the documents indicating they had been signed and sworn to by SA Muller in her presence on February 24, 2017. Id. The magistrate judge reviewed the

packet of documents, dated and signed the search warrant on February 24,

2017 at 10:25 a.m. Suppression Hearing Exhibit 3.

SA Muller took the search warrant packet to the clerk's office for filing.

At that time SA Muller in good faith believed that the warrant was appropriate.[7]

Nothing about the warrant stood out to SA Muller as being different from other

search warrants he had previously dealt with.[8]

On February 27, 2017, as part of the planning process before executing

the search warrant, SA Muller briefed the Internet Crimes Against Children

(ICAC) task force members. At the briefing, SA Muller described Dr. Weber's

case and provided task force members with copies of the search warrant, the

application and attachments A-E. The next morning,[9] SA Muller conducted a

second briefing with the same ICAC task force members, as well as members of

the Spearfish Police Department and the Department of Health and Human

Services Office of the Inspector General. All law enforcement members

involved in the search of Dr. Weber's residence were present at the briefing.

---

[7]Magistrate Judge Wollmann found all of SA Muller's testimony credible. (Docket 55 at pp. 2 & 16).

[8]SA Muller became a certified South Dakota law enforcement officer in approximately 1990. (Docket 46 at p. 6:11-14). Since 2010, he has been employed in the Office of Inspector General of the United States Department of Health and Human Services and received training at the Federal Law Enforcement Training Center, in addition to other training. Id. at p. 6:14-20. During his 17-year career, SA Muller sought and obtained search warrants in state and federal court. Id. at p. 6:24-7:6.

[9]The R&R indicates that the next meeting occurred on "February 28, 2018." (Docket 55 at p. 4). This is an obvious typographical error.

During this briefing, SA Muller again reviewed the search warrant packet and provided each law enforcement member with copies of the search warrant and attachments A and B.   He informed the assembled law enforcement officers they were to search for evidence of sexual abuse and sex travel, and that evidence of those two crimes could potentially intermingle.

Law enforcement executed the search warrant on February 28, 2017, at approximately 9 a.m.   Dr. Weber was at home when the agents executed the search warrant.   SA Muller kept the search warrant, the application, the affidavit and its attachments together as a single bundle throughout the execution process and he directed the search.[10]

The search team seized less than one banker box of items, namely a variety of paper documents and electronic devices.   The agents left a copy of the search warrant and an inventory consisting of a two-page detailed list of items seized.   <u>See</u> Suppression Hearing Exhibit 3 at p. 2; Docket 28-4.[11]   Dr. Weber was not given a copy of either the affidavit or attachments A and B on that date.

---

[10]SA Muller personally seized four or five items of the 31 items identified in attachment B.   (Docket 26 at p. 27:7-17).

[11]The two-page inventory is referenced on page two of the search warrant but was not made an exhibit at the suppression hearing.   Dr. Weber acknowledges receipt of this inventory on February 28, 2017.   (Dockets 28 ¶ 5 and 28-4).

## ANALYSIS

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." <u>Groh v. Ramirez</u>, 540 U.S. 551, 557 (2004) (emphasis omitted). "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." <u>Id.</u> (referencing <u>Massachusetts v. Sheppard</u>, 468 U.S. 981, 988, n.5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional") (other references omitted). "[T]hat high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for [his] inspection." <u>Id.</u> The Supreme Court does not mean to suggest "that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." <u>Id.</u> at 557-58 (referencing <u>United States v. McGrew</u>, 122 F.3d 847, 849-50 (9th Cir. 1997); <u>United States v. Williamson</u>, 1 F.3d 1134, 1136 n.1 (10th Cir. 1993); <u>United States v. Blakeney</u>, 942 F.2d 1001, 1025-26 (6th Cir. 1991); <u>United States v. Maxwell</u>, 920 F.2d 1028, 1031 (D.C. Cir. 1990); <u>United States v. Curry</u>,

911 F.2d 72, 76-77 (8th Cir. 1990); <u>United States v. Roche</u>, 614 F.2d 6, 8 (1st Cir. 1980)).

In <u>Groh</u>, the court focused on a <u>Bivens</u>[12] claim against federal defendants and a § 1983[13] action against county law enforcement officers to determine whether law enforcement was "entitled to qualified immunity given that a Magistrate Judge . . . relying on an affidavit that particularly described the items in question, found probable cause to conduct the search." <u>Groh</u>, 540 U.S. at 553. The Supreme Court found the search warrant violated the Fourth Amendment because "the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant." <u>Id.</u> at 558. Critical to the Supreme Court's resolution of the validity of the search warrant was that "[t]he mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request. Even though petitioner acted with restraint in conducting the search, 'the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.' " <u>Id.</u> at 561 (citing <u>Katz v. United States</u>, 389 U.S. 347, 356 (1967)).

Addressing <u>Groh</u> in a subsequent case, the Supreme Court focused on the fact-specific deficiency of the <u>Groh</u> search warrant.

---

[12]<u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).

[13]42 U.S.C. § 1983.

> [In Groh] [w]e explained that "[i]n the portion of the form that called
> for a description of the 'person or property' to be seized, [the
> applicant] typed a description of [the target's] two-story blue house
> rather than the alleged stockpile of firearms." [Groh, 540 U.S. at]
> 554 . . . Thus, the warrant stated nonsensically that " 'there is now
> concealed [on the specified premises] a certain person or property,
> namely [a] single dwelling residence two story in height which is blue
> in color and has two additions attached to the east.' " Id., at 554-
> 555, n.2 . . . (bracketed material in original). Because "even a
> cursory reading of the warrant in [that] case—perhaps just a simple
> glance—would have revealed a glaring deficiency that any
> reasonable police officer would have known was constitutionally
> fatal," id., at 564 . . . we held that the officer was not entitled to
> qualified immunity.

Messerschmidt v. Millender, 565 U.S. 535, 555 (2012). Messerschmidt was

again looking at an officer's claim of qualified immunity to a § 1983 claim. Id.

at 535. Contrasting the facts of Groh with the facts before it, the court held

> any defect here would not have been obvious from the face of the
> warrant. Rather, any arguable defect would have become apparent
> only upon a close parsing of the warrant application, and a
> comparison of the affidavit to the terms of the warrant to determine
> whether the affidavit established probable cause to search for all the
> items listed in the warrant. This is not an error that "just a simple
> glance" would have revealed. [Groh, 540 U.S. at 564]. Indeed,
> unlike in Groh, the officers here did not merely submit their
> application to a magistrate. They also presented it for review by a
> superior officer, and a deputy district attorney, before submitting it
> to the magistrate. The fact that none of the officials who reviewed
> the application expressed concern about its validity demonstrates
> that any error was not obvious. Groh plainly does not control the
> result here.

Id. at 555-56. "The question in [Messerschmidt] is not whether the magistrate

erred in believing there was sufficient probable cause to support the scope of

the warrant [s]he issued. It is instead whether the magistrate so obviously

erred that any reasonable officer would have recognized the error." Id. at 556.

"The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions. Even if the warrant in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered 'plainly incompetent' for concluding otherwise." Id.

In the R&R, the magistrate judge concluded "[t]he Eighth Circuit has broadly recognized that a warrant which does not on its face identify items to be seized may nevertheless satisfy the particularity requirement by incorporating a supporting document." (Docket 55 at p. 7 (referencing United States v. Hamilton, 591 F.3d 1017, 1024 (8th Cir. 2010)). With this general declaration of the status of the law, the magistrate judge observed:

> The Eighth Circuit has failed to clarify further, instead creating two separate lines of caselaw regarding proper incorporation. While some cases require that the supporting documents "must both accompany the warrant *and* be incorporated into it," United States v. Curry, 911 F.2d 72, 77 n.4 (8th Cir. 1990) (emphasis added), others have held that a supporting attachment "may provide the necessary particularity if it is incorporated into the warrant, attached to the warrant, *or* present at the search." United States v. Nieman, 520 F.3d 834, 839 (8th Cir. 2008) (emphasis added); United States v. Gamboa, 439 F.3d 796, 807 (8th Cir. 2006) (" '[A]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.' ") (quoting Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir. 1987).

Id. at pp. 7-8.

The magistrate judge examined Hamilton and one of the principal cases of the United States Court of Appeals for the Sixth Circuit, Baranski v. Fifteen

Unknown Agents of the Bureau of Alcohol, Tobacco, and Firearms, 452 F.3d 433, 440 (6th Cir. 2006) (*en banc*), as well as Baranski v. United States, 515 F.3d 857, 860-61 (8th Cir. 2008), to find "the Eighth Circuit's analyses in Hamilton and Baranski persuasive as applied to this set of facts." (Docket 55 at pp. 8-10). "In contrast to the invalid warrant issued in Groh, here the undersigned magistrate judge signed and dated the warrant, the application, and the affidavit." Id. at p. 10 (referencing Baranski, 515 F.3d at 860-61). "Thus, unlike Groh, the reviewing court has written assurance that the magistrate judge reviewed the affidavit and the application, which specified the items to be seized, and found probable cause to seize each of those items." Id. (referencing Hamilton, 591 F.3d at 1026) (citing Baranski, 515 F.3d at 860). Based on this analysis, the R&R concludes "[b]ecause the court has assurances that the magistrate judge clearly reviewed the supporting documents and restricted the scope of the search, the warrant satisfied the Fourth Amendment's Warrant Clause when issued." Id.

Defendant objects to the analysis applied in the R&R because "[b]oth Nieman and Gamboa rely on Rickert solely to assert dicta. Both Nieman and Gamboa also ignore Curry, . . . [which] by express reference, overturned any reliance on Rickert for the proposition that a search warrant is sufficient if an affidavit is merely attached, but not incorporated, into the warrant." (Docket 56 at p. 2) (bold omitted).

In <u>Gamboa</u>, the only challenge relevant to this analysis focused on a discrepancy in a search warrant describing the premises to be searched. <u>Gamboa</u>, 439 F.3d at 806.   The <u>Gamboa</u> panel specifically found <u>Groh</u> was "distinguishable," because "[u]nlike the warrant in <u>Groh</u>, the warrant in this case incorporated by reference 'Exhibit A,' which listed in detail the items to be seized . . . ."   <u>Id.</u>   There was no challenge in <u>Gamboa</u> that Exhibit A was attached to the search warrant.   The citation to <u>Richert</u> was simply dicta, which did not directly impact the decision in <u>Gamboa</u>.

In <u>Nieman</u>, the defendant's challenge was only that the search warrant "was overbroad."   <u>Nieman</u>, 520 F.3d at 838.   The affidavit was attached to and referenced in the search warrant.   <u>Id.</u>   The <u>Nieman</u> court concluded the warrant included a description which was "a specific limitation" and that the officer's affidavit "described the types of records, documents, papers, notes and photographs sought . . . ."   <u>Id.</u> at 839.   Again, the citation to <u>Richert</u> was simply dicta and was not material to the court's decision in <u>Nieman</u>.

Defendant's reference to <u>Nieman</u> and <u>Gamboa</u> is without merit.   The R&R did not adopt the decisions of those cases, but rather only referenced them to indicate that panels of the Eighth Circuit have, in specific factual scenarios, applied different requirements to find search warrants constitutionally valid.

Defendant objects to the R&R's reliance on <u>Hamilton</u>.   (Docket 56 at p. 2).   He asserts <u>Hamilton</u> reaffirmed <u>Curry</u> which permitted an affidavit to

supply particularity to a search warrant only when the affidavit is adequately incorporated and accompanies the warrant.   Id.   Defendant also objects to the R&R's reliance on Baranski v. Fifteen Agents because that case noted "[c]onsistent with Groh, all of the courts of appeals (save the Federal Circuit) have permitted warrants to cross-reference supporting affidavits and to satisfy the particularity requirement through an incorporated and attached document– at least when it comes to the validity of the warrant at the time of issuance. . . ."  Id. at p. 3 (bold omitted) (citing Baranski v. Fifteen Agents, 452 F.3d at 440).   Defendant submits "the Report and Recommendation's proclamation that the law is in a 'questionable state' is belied by those cases which have directly addressed the issue."   Id. at p. 3.

Defendant fails to acknowledge the interplay between Hamilton, Baranski v. Fifteen Agents and Baranski.   In Baranski, the Eighth Circuit discussed not only Groh, but Gamboa as well.   See Baranski, 515 F.3d at 860 ("Analogous to Gamboa, the warrant here also referred to an incorporated document, a sealed affidavit which described the items sought.   In contrast to the warrant in Groh, the warrant in Baranski's case plainly showed that a neutral magistrate had approved the search with reference to the incorporated affidavit and had had the opportunity to limit the scope of the search authorized.").   Baranski also acknowledged the ruling of Baranski v. Fifteen Agents, "[i]n contrast to the panel, the en banc court distinguished Groh, reasoning that it had turned on the facial invalidity of the warrant there and that it had not established a

'bright-line rule' that an incorporated affidavit must accompany a warrant at the time of the search." Id. (citing Baranski v. Fifteen Agents, 452 F.3d at 443).

Hamilton discussed Groh, Curry, Gamboa, Baranski v. Fifteen Agents, and Baranski. See Hamilton, 591 F.3d at 1026-27. The Hamilton court then made the following observation:

> [G]iven the questionable state of the law in our circuit about whether an incorporated affidavit must accompany a search warrant to the search for purposes of the particularity requirement, *compare* Baranski, 515 F.3d at 860 (concluding that reference to a sealed affidavit satisfied the particularity requirement) with Curry, 911 F.2d at 77 n.4 (reiterating our circuit's "well-established rule" that an incorporated affidavit must also accompany the warrant), and given the ambiguity on the face of the warrant as to whether the reference to the attached affidavit was intended to refer to the items to be seized or merely the existence of probable cause, there are enough thorny issues in this case to convince us to avoid deciding this issue.

Id. at 1027. The court avoided resolving the particularity issue "because, even if the warrant failed to meet the particularity requirement of the Warrant Clause, the facts of this case do not support imposition of the exclusionary rule." Id.

The court finds the magistrate judge appropriately observed this area of law in the Eighth Circuit on incorporation of other documents in a search warrant is both " 'questionable' and 'thorny.' " (Docket 55). But the thorniness of the law is mostly irrelevant under the facts of this case.

Questions presented by the search warrant are:

1. To what application does the language "[a]n application of a federal law enforcement officer . . . requests the search of the following person or property" refer?

2. To what affidavit is the language "I find the affidavit(s) . . . establish probable cause to search and seize the person or property" referring to?

3. Does the statement in the search warrant that the "property to be seized" is "evidence of a crime" satisfy the Fourth Amendment?

Questions #1 and #2 are addressed with the following factual summary.

There is no question the following uncontested facts exist:

SA Muller prepared the 30-page affidavit, its five attachments, the application and the search warrant at the same time;

The application properly referenced SA Muller' affidavit and intended the property described in the affidavit as the property to be seized;

SA Muller presented this packet to Magistrate Judge Wollmann for consideration;

The magistrate judge witnessed SA Muller's signatures on both the affidavit and application at the same time; and

The magistrate judge reviewed the information presented, found probable cause to issue a warrant and signed the search warrant in SA Muller's presence.

The United States Court of Appeals for the Eighth Circuit recently reviewed a search warrant involving facts very similar to this case.  See United States v. Szczerba, ____ F.3d ____, No. 17-2141, 2018 WL 3581665 (8th Cir. July 26, 2018).   In Szczerba, the court held "that the warrant's authorization to search 'said person' instead of 'said property' did not render the warrant

17

invalid." Id., 2018 WL 3581665, at *5. "In these circumstances, a reasonable officer executing the warrant likely would have read the warrant to authorize the search of the particularly described property and not the person who was mentioned only in relation to the property and only because the property was registered in her name." Id.

The court routinely considers search warrant requests in the same manner and intends the search warrant to include the officer's application, affidavit and any attachments to either of those documents. While the incorporation language of the search warrant could have been more artfully drafted, there is no question that it was SA Muller's affidavit, with attachments A-E, and his application which were being considered by the magistrate judge and against which the Fourth Amendment must be enforced.

The only remaining question is #3—whether the language of the search warrant properly identified the property to be seized. It did not. The language in the search warrant that the "property to be seized" is only identified as "evidence of a crime" is vague and overbroad. Szczerba, 2018 WL 3581665, at *5 ("The warrant lacked particularity, because it did not list the items to be seized or incorporate [the officer's] affidavit.").

This answer is not the end of the inquiry, because the application, which incorporates SA Muller's affidavit and its attachments, is referenced in the search warrant and accompanied the search warrant at the time the magistrate judge considered the warrant. Groth, 540 U.S. at 560. The fact that the

magistrate judge reviewed the packet and issued the search warrant "establish[ed] that [she] agreed that the scope of the search should be as broad as the affiant's request."[14]  Id.  There is no question the magistrate judge "was aware of the scope of the search [she] was authorizing."  Id. at 560 n.4; see also Docket 55 at p. 10 ("[T]he court has assurances that the magistrate judge clearly reviewed the supporting documents and restricted the scope of the search . . . .").

The search warrant is further validated by the fact SA Muller gave the search warrant and attachments A and B to the law enforcement team during both briefings and the complete packet accompanied him during the search which he supervised.  See Baranski v. Fifteen Agents, 452 F.3d at 446 (pre-search briefing by the supervising officer with a detailed explanation of the location to be searched and the items to be seized); United States v. Riesselman, 646 F.3d 1072, 1077 (8th Cir. 2011) ("[T]he record supports the finding that the officers brought the attachment to the scene of the search. . . . [W]e are convinced the search warrant . . . was sufficiently particular because the attachment was present at the scene of the search.").  SA Muller fully understood that the search was to be limited to the items identified in the search warrant packet.  Id. (The packet's "presence limited the scope of the search to the items listed in the attachment.").  The Szczerba court did not

---

[14]Defendant does not challenge the specificity of Attachment B which identifies the property to be seized.

address this factor in its analysis even though the officer who sought the search warrant "brought a copy of the warrant and the supporting affidavit with her when she went to conduct the searches."  Szczerba, 2018 WL 3581665, at *4.

Defendant's final objection focuses on the magistrate judge's alternative analysis and application of Leon in the event the search warrant is declared invalid.   (Docket 56 at p. 3).   He argues Leon cannot save this search because the warrant was so "facially deficient—i.e. in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  Id. (citing Leon, 468 U.S. at 923).

In Leon, the Supreme Court held the exclusionary rule does not apply when a law enforcement officer acts "in objectively reasonable reliance on a subsequently invalidated search warrant."  Leon, 486 U.S. at 922.   The court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  Id. at 923 n.23.   One of the circumstances in which an officer's reliance would not be considered objectively reasonable is when the search warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid."  Id. at 923.

The R&R concluded that "[e]ven if the search warrant failed to meet the particularity requirement of the Warrant Clause, the facts of this case do not

support suppression under the good-faith exception articulated in . . . <u>Leon</u>, 468 U.S. 897 . . . ." (Docket 55 at p. 13). The magistrate judge found "a number of factors weigh in favor of applying the good-faith exception." <u>Id.</u> at p. 14.

> First, . . . SA Muller kept the warrant and attachments together as a single bundle throughout the application and execution process. <u>Id.</u>

> Second, a neutral magistrate considered the packet as a whole, and signed the application, affidavit, and search warrant finding probable cause. <u>Id.</u> at pp. 14-15.

> Third, SA Muller himself directed the search, briefed law enforcement on the case, and provided all searching officers with copies of the limiting attachments. <u>Id.</u> at p. 15.

> Finally, as to Dr. Weber's argument for suppressing any evidence of international sex travel, the typographical error on the application misstating the applicable statute "was more a clerical error than bad faith," as shown by SA Muller's testimony. <u>Id.</u>

Although not specifically identified as a factor in the magistrate judge's good-faith analysis, the magistrate judge found SA Muller's testimony credible "that he did not realize at the time [of the preparation of the search warrant] that he needed to specifically incorporate the limiting attachments. . . . and that the mistake was unintentional." <u>Id.</u> at p. 16 (citation to the record omitted).

Based on these findings, the magistrate judge concluded "SA Muller's actions were objectively reasonable in believing the warrant, bundled together with the carefully constructed supporting documents and authorized by a neutral magistrate judge, authorized the seizure of the items obtained from Dr.

Weber's residence."   Id.   The magistrate judge further concluded "the warrant

was not 'so obviously deficient' that no reasonable officer would presume it

valid."   Id. at pp. 16-17 (citing Groh, 540 U.S. at 558).

In addition to the factors identified in the R&R supporting good-faith, the

court finds the following factors substantiate that finding:

1. The application and search warrant are forms prepared by
   the Administrative Offices of the Judiciary and an objectively
   reasonable law enforcement officer could expect that the
   forms were proper.

2. SA Muller was advised by Assistant United States Attorney
   Sarah Collins in the preparation of the packet of documents.
   If there were any errors in the preparation of the documents,
   an objectively reasonable law enforcement officer would
   expect AUSA Collins to point out those errors and make
   corrections prior to presentation of the packet to the
   magistrate judge.

3. The United States Attorney's Office made the decision the
   search warrant packet complied with the Fourth
   Amendment.

4. The search warrant packet was e-mailed to Magistrate Judge
   Wollmann's chambers for her review prior to the formal
   presentation of the documents for execution.   An objectively
   reasonable officer would expect the magistrate judge to notify
   AUSA Collins if any errors were discovered or if corrections
   were necessary before presentation of the packet for SA
   Muller's signature and execution of the warrant.

5. An objectively reasonable law enforcement officer would
   expect the magistrate judge, after examining the search
   warrant packet, to reject the search warrant or suggest
   necessary corrections, before placing SA Muller under oath,
   witnessing his signatures and executing the search warrant.

6. Based on SA Muller's training and experience, he believed
   the search warrant packet was in proper legal form.

The court concludes "[i]t was objectively reasonable for an officer with [SA Muller's] knowledge and involvement in the warrant application process to rely on the warrant as incorporating the list of items to be seized from the affidavit [and the attached exhibits] . . . ." Hamilton, 591 F.3d at 1029. See also United States v. Wright, 777 F.3d 635, 639 (3d Cir. 2015) ("[A]n 'officer's knowledge and experience' bears on whether it was objectively reasonable for that officer to believe that the search was legal."); United States v. Franz, 772 F.3d 134, 146 n.12 (3d Cir. 2014) ("Groh does not contradict that an officer's knowledge and actions are important components of a good faith analysis."). Like in Szczerba, the court concludes "[c]onsidering the circumstances surrounding the issuance and execution of the search warrant in this case, . . . the warrant was not so obviously deficient that any reasonable officer would have known that it was constitutionally fatal." Szczerba, 2018 WL 3581665, at *6.

SA Muller, "with full knowledge of the items authorized to be seized, carefully executed the warrant, seizing only those items included in the list of items in the affidavit." Hamilton, 591 F.3d at 1029. "Although a warrant application or affidavit cannot save a warrant from facial invalidity, it can support a finding of good faith, particularly where, as here, the officer who prepared the application or affidavit also executed the search." United States v. Russian, 848 F.3d 1239, 1246 (10th Cir. 2017). SA Muller's actions during the execution of the search warrant are additional indices "he acted in good

faith and in objectively reasonable reliance on what he believed was a valid warrant." <u>Id.</u> at 1247.

"Even if the warrant in this case failed to meet the particularity requirement of the Fourth Amendment's Warrant Clause, [SA Muller's] actions were objectively reasonable in believing the warrant and its reference to the affidavit authorized the seizure of the items removed from [Dr. Weber's] residence on [February 28, 2017]." <u>Hamilton</u>, 591 F.3d at 1030. <u>See also</u> <u>Szczerba</u>, 2018 WL 3581665, at *6 (the officer's "conduct certainly did not reflect the type of deliberate, reckless, or grossly negligent disregard for the Fourth Amendment that the exclusionary rule can effectively deter."); <u>United States v. Rosa</u>, 626 F.3d 56, 66 (2d Cir. 2010) (Law enforcement "proceeded as though the limitations contemplated by the supporting documents were present in the warrant itself, and as a result, their actions bear none of the hallmarks of a general search.") (internal citation and quotation marks omitted).

For the reasons stated above, the court finds the magistrate judge's report and recommendation is an appropriate application of the law to the facts presented by the parties at the suppression hearing. For the reasons stated above, the defendant's objections are overruled and the report and recommendation of the magistrate judge is adopted.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's objections (Docket 56) are overruled.

IT IS FURTHER ORDERED that report and recommendation (Docket 55) is adopted consistent with this order.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 28) is denied.

IT IS FURTHER ORDERED that a scheduling order will be entered.

Dated October 15, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE